<hr/>

(May 21, 1904.)

## BOISE IRRIGATION AND LAND COMPANY v. STEWART, JUDGE.

[77 Pac. 25, 321.]

CONSTITUTIONAL LAW—TITLE TO ACT—PUBLIC WATERS—REGULATION OF APPROPRIATION—OWNERSHIP IN WATER—LOCAL AND SPECIAL LAWS—STATE ENGINEER—HOW PAID—COSTS OF MAPS AND PLATS— JUDGE MAY REQUEST STATE ENGINEER TO FURNISH MAPS AND PLATS—DISCRETIONARY—REGULATING PROCEDURE—NO PERSON HAS VESTED RIGHT IN PROCEDURE—RETROSPECTIVE LAW—EVIDENCE IN WATER SUIT—APPOINTMENT OF REFEREE TO TAKE TESTIMONY.

1. The title to an act entitled "An act to regulate the appropriation and diversion of the public waters and to establish rights to the use of said waters and the priority of such rights," approved March 11, 1903 (Sess. Laws 1903, p. 223), *held* sufficient to include all of the provisions of said act particularly referred to in this proceeding and not repugnant to the provisions of section 16, article 3 of the constitution of Idaho.

2. The term "public waters" as used in said act refers to all water running in the natural channel of the streams, and the state may by proper legislation regulate the appropriation and use thereof.

3. The private rights to the use of such waters are rights to use the same, and not an ownership of them while they are flowing in the natural channel of the streams.

4. The title of said act is sufficient to include provisions for the appropriation of such waters and the settlement of the priorities of rights to the use thereof.

5. The provisions of sections 4 and 5 of said act are not repugnant to the provisions of section 2 of article 5 of the state constitution.

6. Said act is not a local or special law within the meaning of subdivision 3 of section 19 of the state constitution, and is not repugnant to sections 2 and 26 of article 5 of the constitution.

7. The work required to be done by the state engineer under the provisions of section 33 of said act must be paid for by the state, and that done under the provisions of section 37 must be paid for by parties to the action.

8. In an action to determine the rights and priorities to the use of water when the defendants file cross-complaints and ask for affirmative relief, the awarding of costs is in the sound discretion of the court.

9. Under the provisions of said section 37 the state engineer is only entitled to recover his actual and necessary costs for the work performed by him, and any party to the action may contest his right to recover the amount claimed by him and the court should only allow his actual and necessary costs.

10. That provision of said section which provides that the "judge of such court shall request the state engineer to make, etc.," is directory and not mandatory, and that matter is left in the sound legal discretion of the judge.

11. The state has the right to prescribe reasonable rules and regulations, whereby the rights and priorities of appropriators to the use of water may be settled and to require them to pay the necessary costs incurred therein.

12. If it is shown that such maps and plats are incorrect in any material particular as to the rights of any of the parties to the suit, the state engineer is not entitled to recover such party's *pro rata* share of the cost of preparing the same.

13. No person has a vested right in any particular mode of procedure for the enforcement or defense of his rights, and if before trial of a cause a new law as to procedure is enacted and goes into effect, it will from that time govern and regulate the proceedings, unless the statute provides to the contrary.

14. The legislature has authority to provide by statute that the statements, maps and plats referred to in section 37 of said act should be accepted as evidence on the trial of actions to establish rights to the use of water and the priority of such rights.

15. The law of evidence is a part of the remedy and is within legislative control.

16. Under the provisions of section 4493, Annotated Code of Civil Procedure (Sess. Laws 1901, p. 132), the court or judge has authority to appoint a referee to take the testimony in the action where the parties are numerous and the convenience of the witnesses and the ends of justice would be promoted thereby.

ORIGINAL proceeding in the supreme court for a writ of prohibition. Writ denied.

The facts are stated in the opinion.

Wood & Wilson and Hawley, Puckett & Hawley, for Plaintiff.

This case is already practically decided by the case of *Bear Lake County v. Budge,* 9 Idaho, 703, 75 Pac. 615. By that decision, sections 34, 35 and 36 of the act in question were declared void. It is hardly probable that the legislature would have enacted a series of unconstitutional sections contained in that act without the enaction of sections 34, 35 and 36, which have been held void. If the last proposition is true the whole act must necessarily fall with the sections already declared unconstitutional. (*Ballentine v. Willey,* 3 Idaho, 496, 95 Am. St. Rep. 17, 31 Pac. 994.) The authorities all hold that while it is an elementary principle that the same statute may be in part constitutional and in part unconstitutional, those parts held constitutional must be wholly independent of the parts declared to be unconstitutional. But "if they are so mutually connected with and dependent upon each other as conditions, considerations or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them." (*Warren v. Charlestown,* 2 Gray, 84.) Again, the statute in question has no application to the case at bar, because unless the contrary manifestly appears, all statutes act prospectively only. This suit was commenced many months before the enactment of the statute, and it is fair to assume that the parties thereto

commenced preparations for their cases and the accumulation
of evidence under the statutes existing when the suit was com-
menced.   Statutes are to be considered prospective unless the
language is such as to show that they were intended to be retro-
spective.   (*Ellis v. Connecticut Mut. Life Ins. Co.,* 8 Fed. 83,
19 Blatchf. 383, and authorities cited; 44 American Digest,
Century ed., col. 2923; *State ex rel. Parker v. Thompson,* 41
Mo. 25; *Garrett v. Doe,* 2 Ill. (1 Scam.) 335, 30 Am. Dec. 653;
*Grinder v. Nelson,* 9 Gill, 229, 52 Am. Dec. 694; *Auditor Gen-
eral v. Chandler,* 108 Mich. 569, 66 N. W. 482; *Trist v. Cab-
enas,* 18 Abb. Pr. 143; *Merwin v. Ballard,* 66 N. C. 298; *Chew
Heong v. United States,* 112 U. S. 536, 5 Sup. Ct. Rep. 255,
28 L. ed. 770.)   The petitioner in this proceeding has one of
the oldest and most extensively developed canal systems in south-
western Idaho.   Its maps, its surveys and its records are ample
and complete, and it was prepared to proceed to trial without
the assistance of the executive branch of the state government,
and without being required to have its property taken for the
costs of a similar survey.   This provision of the statute alone,
providing for the taxation of these surveys as costs, is a taking
of property without due process of law.   It compels the peti-
tioner here to submit to an excessive judgment for costs in-
curred in securing evidence against itself, over which it has no
control, not even the privilege of verification of the information
contained in the surveys, examinations and maps, by cross-ex-
·amination of the parties making surveys and collecting the in-
formation sought to be used as evidence.   In *Cullen et al. v.
Glendora Water Co.,* 113 Cal. 503, 39 Pac. 769, the supreme
court of California passed upon the question in that particular
case as to what was special legislation within the inhibition of
the California constitution, article 4, paragraph 25, similar to
our own.   Section 37, which is the important section attacked
in this action, refers to maps, etc., to be used in the determina-
tion of private as well as public rights, and section 41 expressly
declares that, after the passage of the act, all the waters of the
state are to be controlled and administered in the manner there-
in provided.   The act is unconstitutional because sections 4
and 5 thereof, and upon which the entire act rests, contravene

section 2 of article 5 of the constitution, in that it vests in the state engineer power which is judicial in its character. (17 Am. & Eng. Ency. of Law, 586, 587, and notes; *State v. Gerry,* 68 N. H. 495, 38 Atl. 272, 38 L. R. A. 228; *Thorp v. Freed,* 1 Mont. 657.) The act is unconstitutional for the reason that it is antagonistic to subdivision 3 of section 19 of article 3, and of section 2 of article 5 of the constitution of Idaho.

Rice & Thompson, Richards & Haga, Frank Smith and Wyman & Wyman, for Defendant.

The ultimate questions to be determined are: 1. Did the district court exceed its jurisdiction in making the order set forth in the affidavit requesting the state engineer to make an examination and report thereon? 2. Did the district court exceed its jurisdiction in making the order set forth in the affidavit, appointing N. M. Ruick referee and master? The writ is always refused where it appears that the court has jurisdiction over the matter complained of. (16 Ency. of Pl. & Pr. 1125.) The writ will not be granted where a greater injustice will be done by its issuance than would be prevented by its operation. (23 Am. & Eng. Ency. of Law, 213.) Writ will be refused where parties cannot be placed *in statu quo.* (*Whatley v. Franklin County,* 1 Met. (Mass.) 336.) Remedial statutes may apply to past transactions and pending cases. No person can claim a vested right in any particular mode or procedure for the enforcement or defense of his rights. Where a new statute deals with procedure only, *prima facie* it applies to all actions, those which have accrued or are pending, and future actions. If before final decision a new law as to procedure is enacted and goes into effect, it must from that time govern and regulate the proceedings. (Sutherland on Statutory Construction, sec. 482.) The same rule applies to costs. At any time during the pendency of the suit, and before the right to costs has become vested, the legislature may change the law previously in force, either by totally repealing it or by modification only, or, in the absence of any law, it may enact one. (5 Ency. of Pl. & Pr. 113.) What is a special and what is a general law? The state contains a great variety of subjects of legislation, each re-

quiring provisions peculiar to itself. Generic subjects may be divided and subdivided into as many classes as require this peculiar legislation. Nearly every matter of public concern is divisible, and division is necessary to methodical legislation. A statute relating to persons or things as a class is a general law; one relating to particular person or things of a class is special. (Sutherland on Statutory Construction, sec. 121.) The term "general" is used as contradistinguished from special, and then it means relating to all of a class, instead of to one or a part of that class. (26 Am. & Eng. Ency. of Law, 532.) And as to uniformity of operation, the section of the constitution which provides that "all laws of a general nature shall have a uniform operation" means that every law shall have a uniform operation upon all the citizens or persons or things of any class upon which it purports to take effect, and that it shall not grant to any citizen or class of citizens privileges which, upon the same terms, shall not equally belong to all citizens. (*Brooks v. Hyde,* 37 Cal. 366.) With reference to the objection that the law deprives persons of property without due process of law, and "provides a *pro rata* expense against parties not voluntarily in court," it must be pointed out that courts having jurisdiction of the subject matter have a right to acquire jurisdiction of the person by service of process. And the legislature certainly has the power to authorize courts, after such courts have acquired this twofold jurisdiction, to tax costs according to the provisions of the statute. The legislature has general control over the rules of evidence and may change them at pleasure. (11 Am. & Eng. Ency. of Law, 550.) The legislature of the state has the power by statute to provide that certain circumstances shall constitute *prima facie* evidence of the facts in issue. The law of evidence, being a part of the remedy, is within legislative control. (*Von Hoffman v. Quincy,* 4 Wall. (U. S.) 535, 18 L. ed. 403.) It is within the acknowledged power of every legislature to prescribe the evidence which shall be received, and the effect of that evidence in the courts of its own government. (*Fong Yue Ting v. United States,* 149 U. S. 698, 13 Sup. Ct. Rep. 1016, 37 L. ed. 905.)

Attorney General John A. Bagley, *Amicus Curiae,* files no brief.

· SULLIVAN, C. J.—This is an original application in this court for a writ of prohibition to prohibit the district court of the third judicial district of the state of Idaho, in and for Canyon county, and Norman M. Ruick, Esq., master and referee appointed by said court, from proceeding to take the evidence in that certain cause in said court entitled the "Farmers' Co-operative Ditch Company, a Corporation, Plaintiff, v. The Boise City Irrigation and Land Company et al., Defendants," and from determining said cause or rendering any judgment therein in any way based upon the report of the state engineer or the trial, findings or conclusions of said referee and master, which action was commenced on the twentieth day of August, 1902, for the purpose of adjudicating the priorities to the waters of Boise river. This proceeding is brought by the Boise City Irrigation and Land Company, a corporation, one of the defendants in the above-entitled suit. Many of the defendants have appeared in said suit and filed answers and cross-complaints, claiming the prior right to the use of the waters of said river to the extent of the capacity of their ditches and appropriations.

On the twenty-third day of May, 1903, that court made an order under the provisions of section 37 of an act entitled "An act to regulate the appropriation and diversion of the public waters and establishing the rights to the use of such waters and the priorities of such rights," approved March 11, 1903 (Sess. Laws 1903, p. 223), which order was made without any objection and is as follows, to wit: "That the state engineer shall make an examination of the Boise river and of the canals and ditches diverting water therefrom, and of all the land being irrigated by said canals and ditches and other works, and the lands susceptible of reclamation therefrom, and prepare a map showing such river, canals and ditches and the lands thereunder, and a statement which shall give the condition of such works, their capacity and the amount of land irrigated from each of such canals, ditches and other works, and other essential features in relation to the reclamation of the lands tributary to such stream for use upon the hearing of said cause, as provided in said act." And it was further ordered that the

cost of making such examination and preparing such map or maps should be paid by the parties to said suit as provided in said act.

Thereafter, on the twenty-seventh day of May, 1903, a certified copy of said order was served upon Wayne Darlington, Esq., state engineer of the state of Idaho, together with the following notice signed by the judge of said court:

"To Wayne Darlington, Esq., State Engineer, Boise, Idaho.

"Dear Sir: You are hereby requested to make an examination of the Boise river and of the canals and ditches diverting water therefrom, in accordance with the order of this court made on the twenty-third day of May, A. D. 1903, a copy of which is hereunto attached, for use upon the trial of the cause now pending in the district court of the third judicial district of the state of Idaho, in and for the county of Canyon, in which the Farmers' Co-operative Ditch Company is plaintiff, and the Riverside Irrigating District et al. are defendants, said cause being a suit for the purpose of adjudicating the priorities of the rights to the use of water from said Boise river."

Thereafter, on the twentieth day of June, 1903, the court made the following order:

"This cause coming on further to be heard upon the pleadings, and the issues in this cause having this day been settled and the cause now being ready for trial and the taking of evidence; now, for the information of the court, and the court deeming it a proper case therefor, announces to the attorneys in said cause that he is about to appoint a referee and master in said cause to take the evidence therein and report the same to the court, with conclusions of fact and conclusions of law therefrom. Whereupon, the New York Canal Company filed its objection in writing to the appointment of a referee herein, which objections were by the court overruled, to which ruling counsel for the said New York Canal Company duly excepted, and were given five days to prepare and serve bill of exceptions. And there being no further objections made by any of the parties to said suit to the appointment of a referee herein, and there being no objections made to the qualifications of Norman M. Ruick as such referee, it is hereby ordered that Norman M.

Ruick be, and he is hereby, appointed referee and master in said cause, to take the evidence and report his conclusions of fact and law therefrom to the court for the information of the court.

"It is further ordered that said referee proceed to take and hear the evidence in said cause at Caldwell, Idaho, as soon after the state engineer makes his report in said cause as required by the order of this court made on May 23, 1903, as may be convenient to said referee and the parties to said suit, and that such referee is hereby given authority and power to adjourn said hearing to such other place and time as may be convenient to the parties and their attorneys in interest herein. That as soon as said evidence is completed and said referee is advised as to the proper conclusions of fact and law therefrom, he shall report the same to this court for further trial herein and disposition thereof. That said referee shall give notice to the attorneys in said cause of the times and places where the evidence in said cause will be heard.

"It is further ordered and directed that the clerk of this court shall deliver to said referee a certified copy of this order as his authority for acting herein."

It is further shown that said state engineer complied with the order of said court and filed his report with the clerk of the district court of Canyon county, and that the said Norman M. Ruick has qualified as such referee and master, and is about to proceed under the direction of said court to take the evidence in said cause.

On the sixth day of April, 1904, at the opening of the district court of said county, the Honorable George H. Stewart, judge of said court, announced from the bench that the report of the said engineer had been filed, and that he was about to enter an order directing said referee to proceed with the trial of said cause, and it is alleged that unless said court is prohibited from proceeding with said trial it will proceed and impose heavy costs, occasioned by the action of said state engineer upon the defendants in said cause, which costs amount to nearly $11,000, a large portion of which will be pro-rated to and entered as a judgment against the plaintiff herein, the Boise City

Irrigation and Land Company, without its consent and over its protest and objection.

To said petition or complaint the defendants filed a general demurrer on the ground, to wit, that said petition fails to state a cause of action entitling the petitioner to the relief prayed for. The case was submitted on the complaint and demurrer and the briefs and arguments of counsel. Counsel for the plaintiff specify numerous grounds for the issuance of the writ prayed for. The constitutionality of said act is questioned in several particulars.

It is contended that the subject of said act is not expressed in the title thereof, and for that reason is in contravention of the provisions of section 16 of article 3 of the state constitution, which provides that "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

It is contended that the title of said act includes only "public waters," and that said act, by its provisions, includes private waters. It is also contended that the term "public waters" means only the waters the use of which is declared to be a "public use" by section 1, article 14 of our state constitution, and that if the term "public waters" have any meaning in our law whatever, it applies only to waters of which section 1 of our constitution declares that "The state may regulate and control in the manner prescribed by law." It has been the recognized law of this commonwealth for many years that the right to the use of waters may be acquired by appropriation. (See Rev. Stats. 1887, sec. 3155.) The evident idea of the legislature was that the state owned the waters within its boundaries and that the citizen might acquire by appropriation the right to the use of the same. It is clear that said act was intended to and does include all waters over which the state may exercise regulation or control.

If we take the view that the state owns the water while it is running in the natural channel and has the power to regu-

late its use, and that the appropriator for irrigation can only acquire the right to the use of it, the title to said act is certainly broad enough to include the provisions of said act called in question by this proceeding. We have a number of provisions running through our irrigation law that provide for the regulation of the use of such water. It contains provisions providing the steps that must be taken to complete or perfect an appropriation. The law provides that a notice containing certain facts must be posted at the point where the water is to be diverted and that such notice must be recorded in the office of the recorder of the county where such location is made; that within sixty days after posting such notice work must be begun in the construction of the canal or ditch, and that such work must be prosecuted with reasonable diligence until the completion thereof; that the water must be applied to a beneficial use. The courts of the state may determine whether all those things have been done.

It is further provided that it is a misdemeanor to waste water, and when the appropriator's necessities do not require its use, he must let it run in the natural channel of the stream; and while it is so flowing it is in one sense "public water." Where water has been appropriated for agricultural purposes, it is not used for that purpose more than six or eight months in the year; the remaining part of the year the water is permitted to run in the natural channel of the stream, and may be used by others during the time that the prior appropriator does not need the use of the same. Thus it appears that the legislature has and does exercise a certain control over all the waters of the state while they are flowing in the natural channel of the stream, and the law follows the water after it is diverted therefrom to see that it is applied to a beneficial use. The provisions of the act clearly show that that was the meaning intended by the legislature to be applied to the term "public waters" as used in said title. The provisions of said act refer to the private use of water as well as the public use thereof.

We have under our law two classes of appropriations: (1) appropriations for private use and (2) appropriations for pub-

May, 1904.]    Boise Irr. etc. Co. *v.* Stewart.     49

Opinion of the Court—Sullivan, C. J.

lic use. The act proceeds upon the theory that all waters in the state running in the natural channel of the stream are "public waters"; and private rights authorized by the law are simply rights to the use of the "public waters" and not an ownership in them, at least while they are flowing in the natural channel. In that view of the matter, the title is sufficient to include provisions for the regulation of the appropriation, diversion and use of such waters, and to provide for the settlement of the priorities of appropriators.

Our attention has not been called to any section of our water right law or to any provision of our constitution where the term "public waters" has been used except in the act under consideration. It seems to be well settled that so long as water continues to flow in its natural channel, it is not, and cannot be, made the subject of private ownership except in so far as it is regarded as a part of the land by or through which the stream flows. Under the decisions it would seem that there is no distinct and separate ownership in the *corpus* of the water itself. (Long on Irrigation, sec. 72.)

We think that proposition is true, at least, until the water is diverted from its natural channel into the ditch or canal of the appropriator. It was held in *Kidd v. Laird,* 15 Cal. 162, 76 Am. Dec. 472, that running water, so long as it continues to flow in its natural course, cannot be made the subject of private ownership. A right may be acquired to its use which will be regarded and protected as property, but the right carries with it no specific property in the water itself.

The ninth section of the first act of Congress in regard to the appropriation of water passed on the twenty-sixth day of July, 1866, declares that "Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes have vested and accrued and the same are recognized and acknowledged by the local customs, laws and decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same." (14 Stats. at Large, 253.) It will be observed from that act that the right to the use of water is granted. The legislature of this and other states upon that subject has been to the same

effect, and has not given to the appropriator the ownership of the *corpus* of water itself, but only a right to the use of the water. As touching upon this proposition, see, also, *Atchinson v. Peterson,* 20 Wall. 507, 22 L. ed. 414; *Broder v. Natoma Water etc. Co.,* 101 U. S. 274, 25 L. ed. 790; *Sturr v. Beck,* 133 U. S. 541, 10 Sup. Ct. Rep. 350, 33 L. ed. 761. However, it is conceded by some courts that water taken from the natural channel by an appropriator and confined in his own works may be personal property. (See Long on Irrigation, sec. 72, and authorities cited.)

It is contended that said act is unconstitutional because sections 4 and 5 thereof contravene section 2 of article 5 of the state constitution, in that it vests in the state engineer judicial power. While the provisions of those sections authorize the state engineer to pass upon and decide certain questions and matters, in the first instance, they in no way conflict with the provisions of the said section of the constitution. If anyone is aggrieved by the decision of the state engineer, he has the right to appeal to the district court.

It is also contended that said act is unconstitutional, for the reason that it is antagonistic to subdivision 3 of section 19 of article 3, and of sections 2 and 26 of article 5 of the constitution of Idaho. Said sections refer to the enactment of local and special laws and provide that all laws relating to courts shall be general and of uniform operation throughout the state, and that the force and effect of the proceedings, judgments and decrees of such courts severally shall be uniform.

We are unable to see wherein any of the provisions referred to, since the decision of *Bear Lake County v. Budge,* 9 Idaho, 703, 75 Pac. 615, are repugnant to said provisions of the constitution. It is stated in Sutherland on Statutory Construction, section 121, where the author in discussing what is a special and what is a general law, says: "The state contains a great variety of subjects of legislation, each requiring provisions peculiar to itself. Generic subjects may be divided and subdivided into as many classes as require this peculiar legislation. . . . . Nearly every matter of public concern is divisible, and division is necessary to methodical legislation. A statute re-

lating to persons or things as a class is a general law; one relating to particular persons or things of a class is special." The term "general" is used as contradistinguished from special, and then it means relating to all other classes, instead of to one or a part of that class. (26 Am. & Eng. Ency. of Law, 532.) In *Brooks v. Hyde,* 37 Cal. 366, the court says: "The section of the constitution which provides that all laws of a general nature shall have a uniform operation means that every law shall have the uniform operation upon all the citizens, persons or things of any class upon which it purports to take effect, and that it shall not grant to any citizen or class of citizens privileges which, upon the same terms, shall not equally belong to all citizens."

The act under consideration relates to all of a class, that is, to wit, the appropriators and owners of water rights from the natural streams of the state. This class is general and at the same time peculiar in itself, and it is distinguished from all other classes both as to persons and subject matter by peculiar conditions. It is to those conditions and that class that the legislature has endeavored to apply the provisions of the act under consideration. A general rule has been laid down under which conflicting rights to the use of such water may be determined; and the rule there laid down is applicable to all alike in this peculiar class. The legislature, no doubt, concluded that the procedure for determining such rights should be as simple, effective and inexpensive as practicable under the conditions; and we think the rule laid down in said act is not in conflict with the above-cited sections of the constitution.

The provisions of sections 33 and 37 of said act are directly attacked. Said sections are as follows:

"Sec. 33. It shall be the duty of the state engineer or some qualified assistant to proceed, as soon as may be after the passage of this act, to make an examination of the streams of the state (beginning with those whose waters have not yet been allotted), and the works diverting water therefrom, said examination to include the measurement of the discharge of said streams and the carrying capacity of the various ditches and canals diverting water therefrom; an examination of the irri-

gated lands, and an approximate measurement of the lands irrigated or susceptible of irrigation, from the various ditches and canals, which said observations and measurements shall be reduced to writing and made a matter of record in his office, and it shall be the duty of the state engineer to make or cause to be made, a map or plat on a scale of not less than one inch to the mile, showing with substantial accuracy, the course of the stream, the location of each ditch or canal diverting water therefrom, and the legal subdivisions of land which have been irrigated, and shall also note on such map the lands which are susceptible of irrigation from the ditches and canals already constructed. And such examination shall be made as rapidly as possible to include all the streams used for irrigation in the state. And the state engineer shall indicate on such maps the lands, the water rights for which have been adjudicated by the courts, noting on each tract the number of the priority of such rights, and whenever an application for a permit to appropriate water from a stream shown on such map shall be allowed, such engineer shall indicate on such map the line of such canal or ditch or other works, and indicate by appropriate colors the lands to be irrigated by such works, and shall note thereon the number of such permit. And whenever proof is made that water has been beneficially applied from such works to any of such lands, and license shall be issued for the same as in this act provided, the number of such license so issued shall be at once noted on such map on the subdivision of such lands to which such license shall relate, and all these and other facts relating to the development of irrigation on such stream shall be carefully posted on such map."

"Sec. 37. Whenever suit shall be filed in the district court for the purpose of adjudicating the priorities of rights to the use of water from any stream in the state and before such adjudication is made, the judge of such court shall request the state engineer to make an examination of such stream and the canals and ditches diverting water therefrom and of all the land being irrigated by such canals and ditches and other works and the lands susceptible of reclamation therefrom in the manner provided in section thirty-three (33) of this act, and such

state engineer shall prepare a map showing such stream, canal and ditches and the lands thereunder as provided in such section and a statement which shall give the condition of such works, their capacity and the amount of land irrigated from each of such canals, ditches or other works and other essential features in relation to the reclamation of the lands tributary to such stream. And such map and statement shall be accepted as evidence in the determination of such rights by such court, and a copy of such map and statement shall be placed on file in the office of the state engineer.

"Whenever the state engineer shall make such examination at the request of the court or the judge thereof, the actual cost of making such examination by the state engineer or his assistant and of preparing such maps and statement as shown by sworn statement of such costs prepared by such state engineer, shall be paid by the persons interested in such suit for the determination of such priorities, the amount of such costs to be pro-rated by such court to the persons whose rights have been adjudicated by such suit. In case the state engineer has already made such examination as provided in section (33) of this act, he shall be requested by the court or the judge to furnish a certified copy of the records of the examination, which shall be brought up to date by a further examination on the ground by such engineer if need be, and such certified copies of such records shall be filed and received as evidence in such case as in this section provided."

By section 33 it is made the duty of the state engineer, as soon as may be after the passage of said act, to make an examination of the streams of the state and the works diverting water therefrom, beginning with those streams, the waters of which have not been allotted. The term "allotted" as there used means decreed by the proper court. Under the provisions of that section the work required to be done by the state engineer must be paid for by the state, and it is for the purpose, among others, of making a permanent record of the water appropriations and rights to the use thereof. We find no prohibition in the constitution inhibiting the legislature

from enacting said section 33. If the cost of such work is more than the people desire to pay, the remedy is with the legislature.

Section 37 provides, among other things, that when suit shall be filed in the district court for adjudicating the priorities of the rights to the use of water from any stream, the judge shall request the state engineer to make an examination of such stream and the canals and ditches diverting water therefrom, and of all lands being irrigated by such canals and ditches and other works and the lands susceptible of reclamation therefrom in the manner provided by said section 33. The cost of making such survey, examinations, maps, statements and reports are to be pro-rated as costs against the persons whose rights shall be adjudicated in such suit. It is also provided by section 37 that if the state engineer has already made examination and prepared the necessary maps provided for in section 33, "he shall be requested by the court or judge to furnish a certified copy of the records for examination, . . . . and such certified copy of such records shall be filed and received in evidence in such case as in this section provided." It will be noted that the cost of making a survey and maps above referred to are only taxed as costs in those cases where the streams have not been examined by the state engineer and maps and plats made prior to the request for the evidence by the trial court. It will also be noted that said act provides that the state engineer shall make such examination, maps and surveys beginning with those streams whose waters have not yet been allotted.

In cases where the engineer has made such examinations and maps prior to the trial and the commencement of the action, the state pays the costs thereof, but that where such examinations and maps are made on the request of the judge as provided in section 37, the parties to the action are required to pay such costs.

It is contended that section 4901 et seq. of the Revised Statutes provides a general system for the apportionment of costs in civil actions, and there is nothing so far as the determination of the rights to the use of water are concerned that takes

an action of this kind from under the general rules thus established for the apportionment of costs.

It must not be forgotten that this is a suit in equity, and the apportionment of the costs would be, without a statute, largely in the discretion of the trial court. From past experience the legislature no doubt concluded that it was necessary for the interests of the state and all concerned to have such examinations and maps made by the state engineer, and we find no inhibition in the constitution prohibiting the legislature from providing for such examinations and maps, and their use as evidence on the trial and authorizing the trial court to prorate the costs thereof among the several parties to the suit.

It has been the custom of courts of equity in this state, in the trial of mining cases and litigations in regard to the dividing line between tracts of land, to appoint an engineer or surveyor to make the proper surveys, make plats thereof to be used in the trial of such cases, and to require the parties to such actions to pay the costs thereof, and we think a court of equity has authority to do that. It is contended that said provisions of said act are special and only apply to water cases. While the last contention is true, it certainly would not be contended that an examination of the streams of the state and the making of plats of such streams and ditches would be required in an action on a promissory note or to foreclose a mortgage, or an action to recover damages for defamation of character, or, in fact, in any action except in a water suit. So this act applies to all suits of a certain class and is not violative of any provision of our state constitution.

It is also contended that under this act a party may prove himself absolutely in the right so far as his claim to the right to the use of water is concerned, and may have been brought into litigation without his consent and still be compelled to pay part of the heavy expenses necessarily incurred by reason of this suit, and for that reason it contravenes every part of our laws regulating suits in courts of justices so far as the apportionment of costs is concerned. There is nothing in this contention, for the reason that it is a part of the history of the state that where several persons have settled upon a stream and

56          Boise Irr. etc. Co. *v.* Stewart.          [10 Idaho,

Opinion of the Court—Sullivan, C. J.

diverted water from it at different times and in different amounts for irrigation purposes that it is absolutely necessary to determine the priority of their rights and the amount of water to which each is entitled by a decree of the proper court. That must be done on every stream in the state, and, of course, as long as there is ample water in the stream to supply the necessities of each appropriator, suits are not liable to be brought for the settlement of such priorities, but as soon as more water has been claimed than the stream supplies, the prior appropriators, if they live low down the stream, are required to bring an action to settle the rights of the respective appropriators from such stream, and it has been the custom of courts in this state to apportion the costs of such litigation to the respective parties, and we think properly so. The court in the suit in question had jurisdiction and power to so apportion such costs.

It is also contended that it is contrary to every principle of right and justice to compel parties who have already been to the expense of procuring surveys of their water canals and other appliances for diverting water to pay any part of the expenses for further services, as no benefit would accrue to them from it. It is a sufficient answer to this objection to say that the legislature has concluded that it was better for all parties concerned to have such maps and plats made by the state engineer, or some disinterested person, and if the maps and plats required by the provisions of said sections are made as contemplated, they no doubt would save much to the litigants or parties to said action in witness' fees, even more than their *pro rata* part of the cost of making the same.

It may be unfortunate for the parties to this suit that the state engineer had not proceeded under the provisions of section 33 of said act, and prepared the statement, maps and plats in question before the trial of this action. The law contemplates that he shall proceed and perform the required work as rapidly as such work can be reasonably done; for in case the work had been done, the parties to this action would only have to pay their proportional part as taxpayers of the state. Whereas, under the present facts they are required to pay the

entire costs of such work. But we do not think this a sufficient cause for holding the act unconstitutional. As before suggested, the state engineer is only entitled to recover the actual and necessary costs of such work; and any party to the suit may contest his right to recover the sum claimed by him. And, of course, if it should be made to appear in any particular case that the cost would result in a confiscation of the property included in the litigation, a judge would not be justified in having such maps and plats made. We find nothing in the decision of this court in the case of *Bear Lake County v. Budge, supra,* that conflicts in any way with our views expressed in this opinion.

Said section 37 provides, *inter alia,* "That the judge of said court shall request the state engineer to make an examination of such stream, etc." That provision is directory and it is left to the sound discretion of the judge whether such request shall be made or not.

It is also contended that there are no safeguards provided so far as costs are concerned, and that the matter is left absolutely in the hands of the state engineer without control by the court. We cannot agree with this contention. The state engineer is entitled only to his actual and necessary costs for the work required to be done under the provisions of said sections 33 and 37, and any party to the suit may contest the amount claimed by him or any item thereof. It is the duty of the court to refuse to allow any costs to the state engineer except such as are actually necessary for the performance of the duties required. In case it is shown that the maps and plats are incorrect as to the rights of any of the parties to the action, such parties should not be required to pay any part of such costs. In this case it is admitted that the claim of the state engineer amounts to nearly $11,000. It was also stated that such costs, if prorated, would be about four cents per acre for all of the lands under the ditches involved in this case. That being true, the *pro rata* share of the owner of each one hundred and sixty acres of land would be $6.40. The requirement of the payment of that amount as costs by the owner of one hundred and sixty acres of land certainly would not result in confiscation of very

much property, especially when such lands are reputed to be worth at least $30 per acre.

If said maps and plats have been made as contemplated by said act, in all probability the parties to the suit would need no further evidence in the establishment of their rights than said maps and plats and their own testimony. It would appear to me that in the end the litigants will save a great deal of costs and expenses on account of witnesses which would otherwise be required to establish their rights.

While $11,000 seems a large sum to be paid as costs for such maps and plats, it must be remembered that nearly two hundred thousand acres of land and water rights for the irrigation of the same are to a large extent involved in this action, and the land without the water would be of very little value. If such land with the water right is worth $30 per acre, the lands and water rights would be worth about $6,000,000. Every person who appropriates water under the laws of this state must remember that it is sure to cost something for a final adjudication of such rights and that they must pay the costs.

It is further contended that as this action was commenced prior to the enactment of the law under consideration, its provisions are not applicable to this suit; that to apply them to this action would make said act retroactive and retrospective in its operation. The provisions of said section 37 prescribes certain procedure in suits for the settlement of water rights, and we think the general rule is that rules of procedure, especially so far as costs are concerned, may be changed during the pendency of an action, and we think it well established that the litigant has no vested right therein. It is stated in Sutherland on Statutory Construction, section 482, "No person can claim a vested right in any particular mode of procedure for the enforcement or defense of his rights. Where a new statute deals with procedure only, *prima facie* it applies to all actions—those which have accrued or are pending, and future actions. If before final decision a new law as to procedure is enacted and goes into effect, it must from that time govern and regulate the proceedings."

It is also stated in 5 Encyclopedia of Pleading and Practice, page 113, as follows: "At any time during the pendency of the suit and before the right to costs has become vested, the legislature may change the law previously enforced either by totally repealing it or by modification only, or in the absence of any law it may enact one." Even under penal statutes it was held in *Hopt v. Utah,* 110 U. S. 574, 4 Sup. Ct. Rep. 202, 28 L. ed. 262; "Alterations which do not increase the punishment, nor change the ingredients of the offense, or the ultimate facts necessary to establish guilt, but only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the state, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury *can be made applicable to prosecutions of trials thereafter had,* without reference to the date of the commission of the offense charged." We think that the provisions of said section relating to the point under consideration were intended to, and do, apply to suits begun before the enactment of said law as well as those commenced after. We understand that statutes generally are to be construed as prospective unless the language is such as to show that they were intended to be retrospective. But even if the legislative intent was to have the provisions of said act apply to suits that should be commenced after its enactment, we think the court had jurisdiction in the case under consideration to order such plats and maps made if it was convinced that it was necessary for the proper hearing and determination of said case to have such maps prepared.

It is contended that the provisions of said section 37 provide for a new kind of evidence, and that said act does not provide whether such evidence shall be conclusive or only presumptive, and that if it is to be received as *prima facie* evidence only, then it would involve the party disputing it in double expenses and costs, because he would be required to have other surveys made at his own expense in order to show the errors committed by the state engineer, and that such pro-

vision is a radical innovation on the old form of evidence, something unheard of in legal procedure, and should be held invalid for that reason. I think it was the intent of the legislature to authorize the court to accept such evidence just the same as any other evidence is accepted and to consider it with all the other evidence in the case, and if it is shown to be incorrect, to reject it; otherwise to give it such effect as under all the evidence the court might think it entitled to. I think the legislature has the power to authorize such maps and plats to be introduced as evidence in a case, leaving it with the court to decide what effect should be given to the same. The legislature has provided that certified copies of certain recorded instruments may be used as evidence, and that some of such instruments when introduced shall be *prima facie* evidence of what they contain. The legislature has not declared what effect should be given to the statements and maps referred to, leaving it for the court to decide what effect should be given to them. Under the provisions of said section statements and maps made by a sworn officer of the state are authorized to be used as evidence in such cases, and we think the legislature had ample authority to do so.

The provision referred to contemplates that the maps and statements of the state engineer shall constitute a part of the public records, and also provides for using them, as well as certified copies thereof, as evidence in the trial of water cases. And so far as evidence is concerned, it merely states a general rule of proceeding. The authorities hold that the legislature has power to change by statute the rules of evidence at pleasure. In 11 American and English Encyclopedia of Law, 550, it is stated: "The legislature has general control over the rules of evidence and may change them at pleasure."

In *Von Hoffman v. Quincy,* 4 Wall. 535, 18 L. ed. 403, it is said: "The legislature of this state has the power by statute to provide that certain circumstances shall constitute *prima facie* evidence of the facts in issue. The law of evidence, being a part of the remedy, is within legislative control." And in *Fong Yue Ting v. United States,* 149 U. S. 905, 13 Sup. Ct. Rep. 1016, 37 L. ed. 905, the court says: "It is within the

acknowledged power of every legislature to prescribe the evidence which shall be received and the effect of that evidence in the courts of its own government."

It is further contended that the court exceeded its jurisdiction in appointing Norman M. Ruick, Esq., referee and master, and authorizing him to take the testimony in said case and report his findings of fact and conclusions of law for the information of the court. Under the provisions of section 4493, Annotated Code of Civil Procedure, Session Laws of 1901, page 132, the court or the judge at chambers is authorized to appoint a referee to take the testimony in certain cases therein designated. The purpose and object of that act is expressed in the title as follows: "An act to provide for taking testimony out of court upon an order of the court or the judge thereof," and was enacted for the purpose of taking testimony in certain cases where the parties to the action were numerous and the convenience of the witnesses and the ends of justice would be promoted thereby. The legislature, no doubt, had in mind in the enactment of that law the taking of testimony in water cases where the parties and witnesses were very numerous and the convenience of the witnesses and the ends of justice would be promoted by the appointment of a referee to take the evidence. I think the court had full power and authority to appoint said referee. Of course it is contemplated that a referee will not be appointed, and thus increase the costs of the suit unless it is necessary to do so, for if the judge tries the case, the costs of a referee are saved to the litigants. That part of the order which directs the referee to "report his conclusions of fact and law therefrom to the court for the information of the court," of course is not binding on the court, and is only for the information of the court, and in no wise invalidates the order.

Under the provisions of section 2825, Revised Statutes, ditches and water rights are declared to be real property. A water right may be held and sold and transferred separate from land, and, until the act under consideration became a law, we had no law providing for a record of the title to water rights as we have of a record of title to land. The legislature no doubt considered that the time had come in this state when a

record by maps, plats, etc., should be made of titles to ditches and water rights, as water rights have become very valuable property in this state.

Said section 33 provides for plats and maps of all ditches and water rights and thus lays the foundation for a record title to that class of property to a certain extent at least. The provisions of that section makes it the duty of the state engineer and qualified assistants to proceed to make an examination of the streams of this state, beginning with those whose waters have not been allotted, and make maps and plats thereof containing certain things mentioned in said section, and thereafter to indicate on such maps subsequent appropriations of water from the stream or streams covered by such maps. When such maps are completed the state has a record that is of great value. While we have had a law for years providing for a record of water location notices, such record is of no value as to the quantity of water actually appropriated under such notices, and the maps and plats would furnish much information in regard to canals, ditches and water rights.

I think the title to said act is sufficient to include the provisions of said act attacked in this proceeding as unconstitutional. That the court had authority to request the state engineer to make the maps and plats referred to and appoint a referee to take the evidence in said case and report to the court for its information, and from said referee's findings of fact and conclusions of law contained in said report to pro-rate the costs among the parties.

The application for the writ is denied.

Ailshie, J., concurs in the conclusion reached.

(July 1, 1904.)

STOCKSLAGER, J., Dissenting.—I concur with my associates in the conclusion that the district court in the exercise of its discretion may appoint a referee to take the evidence and report findings and conclusions to that court. When such an order is made this court will not disturb it unless it distinctly shows an abuse of such discretion. The fact that the wisdom

of such proceeding might be doubted or questioned is not suffi-
cient cause for a reversal.    We find by the admitted facts in this
case that by the provisions of sections 33 and 37 of the laws of
1903, this case reaches the referee loaded down with about
$11,000 costs, all of which have accrued in the office of the state
engineer.    Following this will come the cost of the referee and
the trial before him; then anyone who feels aggrieved by his
findings and conclusions must follow his case into the district
court with the additional cost of a further hearing there.

We are told that great benefits will flow from the record to
be made in the office of the state engineer, in that it will there
be shown just how much water is appropriated and used from
the Boise river.    This may be information of value to the future
appropriator, but of what interest is it to the appropriator who
has spent years of his time, labor and money acquiring a home
all dependent upon the energy he has put forth in securing his
prior right to the use of such water?    It certainly must be con-
ceded that the provisions of this law providing for making a
record in the office of the state engineer for use on the trial
and for future reference, as well as the maps provided for, adds
enormously to the cost of this trial.    Can it be said it is for the
benefit of the present appropriators?    We think not.    They
should be permitted to try their case on such evidence as suits
their convenience and ability to pay for.    If the parties to this
litigation desire to use maps, why should they not be permitted
to employ a civil engineer of their own choice to prepare such
maps as they need?    It is urged that one party to this litiga-
tion has a complete map showing all necessary things to estab-
lish its right to the use of the waters of this stream; that this
map was prepared at large expense.    Should it be required to
pay its share of the expense of a map prepared by the state en-
gineer for which it has no use?    We think not.    The theory of
the law is that all parties to litigation may proceed in such way
as seems best to them, and provide the court with the kind or
character of evidence as will best serve their purposes, and hence
they are not chargeable with a class of evidence they have not
asked for and which the legislature has attempted to force upon
them and make it a proper and necessary charge against them.

It is not within the constitutional power of the legislature to prescribe any particular method by which a citizen of this state must establish his right to the use of the waters of the streams of the state that he has appropriated and used long years prior to the enactment of such laws. It is urged that no one is bound by the report and maps of the state engineer; that anyone may produce other evidence or witnesses on the trial of the cause. This is true, but, nevertheless, each and all parties to the litigation are required to pay their proportionate share of the $11,000 expenses of the state engineer's office. In other words, the litigant is not consulted as to whether or not he is willing to accept the maps and report of the state engineer as evidence in the case, but he must pay his proportion of such costs, and if he is dissatisfied, counsel for defendants are charitable enough to suggest that he may procure such other evidence as suits him to impeach the record of the state engineer—so long of course, as he is willing to pay for the evidence furnished— not at his request, or even his consent, but by legislative enactment. I do not think the legislature has the power to · thus burden the people of the state who are so unfortunate as to have homes dependent upon the waters of an unlitigated stream. The settlers should be permitted to determine their rights as between themselves by such evidence as seems satisfactory to them, and if it is a matter of state interest, it is the duty of the state to provide such maps and records at the expense of the state, or if in the interest of the future · applicants for the waters of such streams, then the burden should be borne by them, or the state for them, and not by those who have been diligent and industrious in procuring what they had a right to believe was a home and sufficient water to irrigate it without molestation and expense imposed upon them by the state. It is clear to me that they have this right, and any act of the legislature attempting to provide evidence at their expense in the settlement of their rights as between themselves or future appropriators is a violation of section 19, subdivision 3, article 3 of the state constitution, which says: "The legislature shall not pass local or special laws in the following cases, that is to say, regulating the practice of courts of justice."

In the case of *Bear Lake County v. Budge,* 9 Idaho, 703, 75 Pac. 614, in passing upon the constitutionality of sections 34, 35 and 36 of the act in question, this court said: "We have a general law providing how the summons must be served in cases to quiet title or determine adverse interests to private property, and the provisions therefor in the act under consideration provide a different method brought by a water commissioner for that purpose. Said act is also in violation of our statute which requires suits to be brought in the name of the real party in interest." I concurred in that opinion, and for the reason therein enunciated and the authorities therein cited I cannot concur in this. If sections 34, 35 and 36 were special legislation for the reasons therein stated, then section 37 is special legislation for the reason that it attempts to provide evidence and charge it to all the litigants of the case, irrespective of whether they need or desire it or not. Again, it does not even leave it to the discretion of the court to determine who should pay for this special class of evidence. If it did, there would be more justification in the law, as the court could, in the interest of justice, charge the costs of his class of evidence to such claimants as should rightfully pay for it.

Another serious and important question is raised and urged by the plaintiff in this action, and that is the manner in which the law attempts to enforce the collection of the costs of the state engineer's office. It provides that a judgment shall be rendered against each party, let him be plaintiff or defendant, but does not say in whose favor the judgment shall run, hence the question arises, How shall this judgment be entered? Not in the name of the state engineer, for the reason that he is not a party to the action; not in the name of the state or county, for the same reason. I think the legislature had the same difficulty in settling this question that confronts me. The majority opinion says: "It has been the custom of courts in this state to apportion the costs of such litigation to the respective parties, and we think properly so. The court in the suit in question had jurisdiction and power to so apportion such costs." That is true so far as all costs in an action of this kind may be concerned aside from the cost of the state engineer's office. Here

is a special provision of the law providing that each party shall pay his proportion of this cost and that a judgment shall be entered for it. Again, we ask, in whose favor? If the law had provided that anyone refusing to pay his proportion of this cost, the state, or the plaintiff in the action should pay it, and a judgment entered against the party refusing to pay, in favor of the party paying it, then the court could enter a proper judgment.

I apprehend the trial court will find difficulty in rendering a judgment that will have validity or can be enforced.

For the foregoing reasons, I think the writ should issue.