912 P.2d 614

## In re SRBA CASE NO. 39576.

**STATE of Idaho, ex rel. R. Keith HIGGINSON, as Director of the Department of Water Resources, Idaho Ground Water Appropriators, Inc., Petitioners–Appellants,**

and

**Legislature of the State of Idaho, Intervenor–Appellant,**

v.

**The UNITED STATES of America; Boise–Kuna Irrigation District, New York Irrigation District, Wilder Irrigation District, Big Bend Irrigation District; Nampa–Meridian Irrigation District, Grindstone Butte Mutual Canal Co., Rim View Trout; Pioneer Irrigation District, Sinclair Oil d/b/a Sun Valley Co., Payette Water Users Association, Inc., Thompson Creek Mining; Big Lost River Irrigation District, A & B Irrigation District, Burley Irrigation District, Falls Irrigation District, Aberdeen–Springfield Canal Company; Hagerman Water Right Owners Association; Idaho Power Company, Twin Falls Canal Company, North Side Canal Company; Fremont–Madison Irrigation District and Mitigation Group; J.R. Simplot Company; Nez Perce Tribe; Big Lost River Water Users Association; Richard F. Smith, Dick Smith Farms, Danny Summers, Bart H. Webster, Franko Farms, Craig J. Smith, John H. Smith & Sons, Upper Valley Irrigators Association; Certain Upper Valley Irrigators; Burgess Canal, Butler Island, Craig Mattson Canal, Corbett Slough, Foster Argo, Idaho Irrigation District, Independent Canal Company, Island Canal Company, Kite & Nord, Labelle Irrigating**

Company, Long Island Irrigation Company, North Rigby Irrigation, Parks & Lewisville Canal, Poplar Irrigation District, Rudy Canal Company, Snake River Valley Irrigation, Sunnydell Irrigation, West Labelle Irrigation, Respondents.

No. 21869.

Supreme Court of Idaho,
Boise, April 1995 Term.

Sept. 1, 1995.

Rehearing Denied Aug. 3, 1995.

Alan G. Lance, Attorney General, Clive Strong, Deputy Attorney General, Boise, for petitioner-appellant State of Idaho. Clive Strong argued.

Givens, Pursley & Huntley, Boise, for petitioner-appellant Idaho Ground Water Appropriators, Inc. Jeffrey C. Fereday argued.

Hopkins, Roden, Crockett, Hansen & Hoopes, Idaho Falls, for intervenor-appellant. C. Timothy Hopkins argued.

Betty H. Richardson, U.S. Attorney, Boise, William B. Lazarus, Dept. of Justice, Washington, D.C., for respondents U.S.A. William B. Lazarus argued.

Hepworth, Lezamiz & Hohnhorst, Twin Falls, for respondent Hagerman Water Rights Owners Association. John C. Honhorst argued.

Hollifield, Tolman & Bevan, Twin Falls, for respondent Big Lost River Water Users Association. William R. Hollifield argued.

## AMENDED OPINION

### THE COURT'S PRIOR OPINION DATED JUNE 23, 1995 IS HEREBY WITHDRAWN

McDEVITT, Chief Justice.

### I.

### BACKGROUND AND PRIOR PROCEEDINGS

This case presents no disputed facts. As explained in *In re Snake River Basin Water Sys.*, 115 Idaho 1, 764 P.2d 78 (1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989), the Legislature, in response to the Swan Falls controversy, enacted H.B. 70 and H.B. 267 establishing a general adjudication of the water rights on the Snake River Basin. H.B. 70, 267, 1985 Idaho Sess.Laws Ch. 18, pp. 27–31; Ch. 118, pp. 286–88. In 1986, prior to the commencement of the Snake River Basin Adjudication (SRBA), the Legislature added to and modified Title 42, Chapter 14 of the Idaho Code, governing the adjudication of water rights. H.B. 642, 1986 Idaho Sess.Laws Ch. 220, pp. 558–84. These changes were enacted, in

part, to bring the SRBA within the terms of the McCarran Amendment, 43 U.S.C. § 666. The McCarran Amendment waives federal sovereign immunity in certain general water adjudications, allowing the United States and Indian tribes' water rights to be determined in state-court proceedings.

The 1986 statutes detailed the duties of the Director (the Director) of the Idaho Department of Water Resources (IDWR) to investigate and report the rights of water users in the water system, I.C. § 42–1408 (1986), and provided that the Director would be a party in the adjudication. I.C. § 42–1401A(7) (1986). The methods of filing objections to the Director's report and claimed water rights, filing responses to those objections, and judicial resolution of the issues are provided by I.C. § 42–1412 (1986). That section also provides that "[t]he report of the director, objections, responses to objections, notices of claims and any negotiated agreement between the state of Idaho and any federal reserved water right claimant shall constitute the pleadings." I.C. § 42–1412(4) (1986).

When no objections have been filed to a portion of the Director's report, the statutes provide that those portions "shall be admitted as true facts." I.C. § 42–4212(9) (1986). When an objection has been filed to a water right claimed or to the contents of a portion of the Director's report, the district court is directed to "conduct [a] trial without a jury on an objection or any group of objections in accordance with the Idaho rules of civil procedure." I.C. § 42–1412(7) (1986).

In 1987, the Director filed a petition for the commencement of the SRBA in accordance with the statutes, and the district court issued a commencement order on November 19, 1987. On appeal, this Court affirmed the order commencing the SRBA. *In re Snake River Basin Water Sys.*, 115 Idaho 1, 764 P.2d 78 (1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989).

After the commencement of the SRBA, this Court issued a Supplemental Order Granting Additional Powers to District Judge. In that order, this Court granted the district court "the authority and power to modify the procedure for making service of pleadings, motions, notices of hearing and other documents and the procedure of giving notice of hearings and trials before the court or any masters appointed by the court." In response to this order, the district court issued SRBA Administrative Order 1, supplementing the applicable Rules of Civil Procedure with specialized procedures "to the extent necessary to allow for the fair and expeditious resolution of all claims or issues in the SRBA."

During the course of the proceedings, the role of various state agencies, including the role of the Director, became a significant issue in the SRBA. When the Director failed to comply with discovery requests from the Hagerman Water Rights Owner's Association (Hagerman), Hagerman filed a motion to compel discovery with the district court. Following oral argument, the district court granted Hagerman's motion to compel and awarded costs and attorney fees to Hagerman. The district court further ordered that "[t]his sanction shall not be paid out of the Water Resources' Adjudication Account." IDWR filed a motion for permissive appeal from the award of fees, which the district court denied.

In 1993, owners of water rights governed by the SRBA filed a petition for a writ of mandate to compel the Director to deliver water sufficient to fulfill their previously adjudicated rights. The district court issued the writ of mandate and awarded attorney fees against the Director, finding that the Director and IDWR had no reasonable basis in law or fact to justify denying the request for delivery, and that the Director and IDWR's defense of the suit was frivolous, unreasonable, and without foundation. This Court affirmed the district court on appeal. *Musser v. Higginson*, 125 Idaho 392, 871 P.2d 809 (1994).

An injunction was also sought, seeking to prohibit the Idaho Department of Fish and Game (Fish and Game) from diverting water from Niagara Springs Creek. The injunction was based on the Director's report, which was objected to by Fish and Game. During the proceedings, the Director and Fish and Game were both represented by the Idaho

Attorney General's office, despite the fact that they were arguing adversarial positions.

In response to the controversy surrounding the role of the Director, the district court designated basin-wide issue number two. The district court framed that issue as: "What is the role of the Director, i.e., The Idaho Department of Water Resources, as a party in this statutory adjudication requiring the judicial determination of each claimant's right to the use of water in the Snake River Basin."

Prior to the district court's ruling on basin-wide issue two, the Legislature significantly revised and amended the SRBA statutes. H.B. 969, 990, 1994 Sess.Laws Ch. 454, pp. 1443–78; Ch. 455 pp. 1478–91. Under the amended statutes, the Director was no longer included in the definition of "Party," I.C. § 42–1401A(7) (1994), and the Director's reports, notices of claimed water rights, objections to those claims, responses to objections, and negotiated agreements were no longer referred to as pleadings. I.C. § 42–1412(4) (1994). The code section setting out the requirements for the Director's report was amended to grant the Director more discretion in defining the form and content of the report. I.C. § 42–1411 (1994).

Idaho Code Sections 42–1401B and 1401C (1994) were adopted to define, respectively, the role of the Director and the role of various state agencies in the SRBA. I.C. § 42–1401B(1) (1994) provides that "[t]he director's role under this chapter is as an independent expert and technical assistant. . . ." Subsections two and three of that statute provide that the Director is neither a claimant on behalf of the State nor a party in the SRBA. I.C. §§ 42–1401B(2), (3). Under I.C. § 42–1401C(1), the Idaho Water Resource Board and each state agency, with the exception of IDWR, "may file a claim and appear separately in any adjudication through the attorney general." The Legislature also enacted I.C. § 42–1423, which provides that the State and all state agencies are immune from awards of costs or attorney fees other than those costs required under I.C. § 42–1414 for appearing in a water rights adjudication. When the time for filing objections to the Director's report has ex-

pired, but before any trial is commenced, the 1994 statutes also require that the district court conduct mandatory settlement conferences. I.C. § 42–1412(4) (1994).

The scope and evidentiary effect of the Director's reports were also redefined by the 1994 amendments. I.C. § 42–1411 (1994). In addition to defining the Director as an advisor and technical assistant, the 1994 statutes provide that the Director's report "shall constitute prima facie evidence of the nature and extent of the water rights acquired under state law." I.C. § 42–1411(4) (1994). That section further provides that "[t]he unobjected to portions of the director's report shall be decreed as reported." *Id.*

In order to resolve the legal and constitutional questions presented by the application of this legislation to the SRBA, the district court issued an order designating basin-wide issue three. The district court designated the following questions as basin-wide issue three:

1. Can the Legislature expand or reduce the court's jurisdiction in the SRBA after jurisdiction attaches to the parties and subjectmatter of the action following the issuance of the *Commencement Order* and the filing of notices of claims? Specifically, can the following legislative changes to the court's jurisdiction be made during the pendency of the SRBA:

a. Changes in party status, pleadings and relief to be decreed;

b. Modification of the Idaho Rules of Civil Procedure with respect to the award of costs and attorney fees and the use of mandatory settlement conferences;

c. Modification of the Idaho Rules of Evidence with respect to the designation of expert witnesses, the rules governing expert witness testimony, the admissibility of evidence and the legal weight to be attributed to evidence; and

d. Expansion of the court's jurisdiction to decree provisions controlling the administration of water rights by the Director of the Idaho Department of Water Resources.

2. Resolution of issue number 1 (above) requires determining whether the SRBA is a court or an administrative proceeding.

Following extensive briefing and argument, the district court issued a memorandum decision and order on basin-wide issue number three, holding that most of the 1994 amendments and statutes are unconstitutional. The district court concluded that the SRBA is a judicial proceeding and, therefore, an adjudication within the terms of the McCarran Amendment. Because the SRBA is an ongoing judicial proceeding, however, the district court concluded that the Legislature could not alter the court's jurisdiction over the parties or subject matter of the suit. The district court also held that the limitations on judicial authority prohibited the district court from administering water rights.

Subsumed by this issue was the role of the Director and the State. Essentially resolving basin-wide issue number two, the district court held that the Director is a party in the SRBA, and the State is an interested party in the proceeding. The district court held that resolving the separate interests of different state agencies presented a non-justiciable political question. The court also held that allowing the State to appear as multiple parties violated constitutional due process protections and would remove the SRBA from the waiver of federal sovereign immunity authorized by Congress through the McCarran amendment.

The district court also concluded that the legislative designation of the Director as an independent expert was an impermissible legislative modification of the Rules of Evidence promulgated by this Court. Concluding that the State's consent to waive its sovereign immunity from awards of costs and fees under the 1986 statutes could not be withdrawn or limited after personal and subject matter jurisdiction in the action had attached, the district court held that I.C. § 42–1423 was unconstitutional. The district court also held that the Legislature could not restrict the court's inherent power to award costs and fees in the proceedings before it.

Because the district court concluded that the majority of the 1994 statutes were either unconstitutional or were dependant on the unconstitutional statutes to an extent that they could not survive independent constitutional scrutiny, the district court declared that the 1994 statutes had no effect on the 1985 and 1986 SRBA statutes. The court directed that the SRBA would therefore proceed under those earlier provisions.

The State and Idaho Ground Water Appropriators, Inc. (IGWA) filed motions for permissive appeal under Idaho Appellate Rule 12, which were granted. This Court also granted the Legislature permission to intervene in the appeal as an appellant.

## II.

## RULE–MAKING AUTHORITY UNDER THE IDAHO CONSTITUTION

Article Five of the Idaho Constitution provides for and governs the powers of the judicial branch of government. The section of that Article governing the powers of the Legislature and the courts to enact procedural rules provides:

> POWER OF LEGISLATURE RESPECTING COURTS. The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution, provided, however, that the legislature can provide mandatory minimum sentences for any crimes, and any sentence imposed shall be not less than the mandatory minimum sentence so provided. Any mandatory sentence so imposed shall not be reduced.

Idaho Const. art. V, § 13.

This Court has recognized that Article V, Section 13 of the Idaho Constitution provides a shared power to enact "methods of proceeding" in the district courts. *R.E.W. Constr. Co. v. District Court*, 88 Idaho 426, 400 P.2d 390 (1965). In *R.E.W. Construc-*

*tion,* this Court discussed the provision of the Idaho Constitution providing that the Legislature shall "regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution," noting:

> The use of the words "when necessary" in this portion of the section has reference only to the situation where the "method of proceeding" has not otherwise been regulated, or where changing time has required further or different regulation, then the legislature shall regulate such matters. .... Article 5 of the constitution deals wholly with the judicial power, and it is our conclusion that the provisions of Art. 5, § 13 thereof, grants only limited authority to the legislature to enter into the judicial field of rule-making when the necessity therefor appears, and that the judicial power in the area of rule-making has not been exclusively pre-empted by the legislature.

*Id.* at 437, 400 P.2d at 397. In *Ross v. Ross,* 117 Idaho 548, 789 P.2d 1139 (1990), this Court applied the *R.E.W. Construction* rationale to uphold the validity of a legislative procedure made "necessary" within the meaning of Article V, Section 13 by changes in federal law. This Court held that, "[s]ince I.R.C.P. 60(b) does not provide a method of proceeding in a case like this, under article 5, section 13 the Legislature was entitled to enact ... a necessary method for considering the modification of judgments...." *Id.* at 552, 789 P.2d at 1143.

■ This Court has consistently recognized that Article V, Section 13 of the Idaho Constitution empowers the Legislature of this state to enact procedural rules when such rules are necessary because of changing times or circumstances or the absence of a rule from this Court. Whether legislative action in this context is necessary within the meaning of Article V, Section 13 is a constitutional determination to be passed upon by this Court. *See Miles v. Idaho Power Co.,* 116 Idaho 635, 640, 778 P.2d 757, 762 (1989) ("Passing on the constitutionality of statutory enactments, even enactments with political overtones, is a fundamental responsibility of the judiciary, and has been so since *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1813).").

### III.

### THE LEGISLATURE ACTED WITHIN ITS CONSTITUTIONAL AUTHORITY BY ESTABLISHING PROCEDURES NECESSARY TO COMMENCE THE SRBA

The fact that a general water adjudication may require special procedures for bringing all potential claimants into court and commencing the adjudication was addressed by this Court before any such adjudication had been authorized by the Legislature. In *Mays v. District Court,* 34 Idaho 200, 200 P. 115 (1921), this Court noted that:

> The question as to whether a proceeding could be provided by statute, strictly *in rem,* by which the rights of every existing claimant could be adjudicated, discussed, but not decided in that case, is not before us for decision. There is no such statutory proceeding in this state. The decrees which petitioner relies on as a bar were ordinary decrees, obtained in the ordinary priority suit. .... In [*Farmers' Union Ditch Co. v. Rio Grande Canal Co.,* 37 Colo. 512, 86 P. 1042 (1906),] it was held that, on collateral attack, by a party who claimed a right to use the water, and did not appear in the original proceedings, it was presumed that proper notice had been given. If we had such a statutory proceeding, if the method of service provided by it constituted due process, and if the decrees relied on by petitioners were obtained in such a proceeding, the question would be far different. Such are not the facts.

*Id.* at 208, 200 P. at 116–17. This Court has long accepted that water right adjudications present unique circumstances, often requiring a departure from established rules of procedure. In *Joyce v. Rubin,* 23 Idaho 296, 303, 130 P. 793, 795 (1913), this Court observed:

> It must be remembered that a suit to determine the priority and amount of water that each user from a stream is entitled

to is somewhat different from the ordinary action, and the general rules of pleading have never been technically observed or strictly enforced in this class of cases, for if they were, in many cases where there are a hundred or more parties to the action the pleadings would be very voluminous.

*Id.*

When the SRBA was authorized by statute in 1986, no reasonable method of initiating the proceeding, providing notice to potential claimants, examining the Snake River Basin or preparing a report of that system, or means of objecting to that report or claimed water rights within that system was provided by the existing Rules of Civil Procedure. In order for the Legislature to provide for an adjudication, including the claims within the scope of the McCarran Amendment, and in light of the absence of applicable Rules of Civil Procedure, it was necessary for the Legislature to provide special procedural rules for the initiation of the SRBA.

### IV.

**THE 1994 ADJUDICATION STATUTES WERE A PROPER EXERCISE OF LEGISLATIVE AUTHORITY TO THE EXTENT THOSE STATUTES PRESCRIBE SUBSTANTIVE LAW OR DO NOT CONFLICT WITH RULES OF THIS COURT**

The Idaho Constitution vests the power to enact substantive laws in the Legislature. Idaho Const. art. III, § 1; *see also Mead v. Arnell,* 117 Idaho 660, 664, 791 P.2d 410, 414 (1990) ("[O]f Idaho's three branches of government, only the legislature has the power to make 'law.'"). This power is not restricted by the Court's authority to enact rules of procedure to be followed in the district courts. *State v. Beam,* 121 Idaho 862, 863, 828 P.2d 891, 892 (1992) ("[T]his Court's rule making power goes to *procedural,* as opposed to *substantive,* rules."). This Court has adopted the standard for delineating substantive laws from procedural rules promulgated by the Washington Supreme Court in *State v. Smith,* 84 Wash.2d 498, 527 P.2d 674 (1974). In *Smith,* the Washington

Supreme Court observed that substantive law "creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated." *Id.* at 501, 527 P.2d at 677, *quoted in Beam,* 121 Idaho at 863–64, 828 P.2d at 892–93.

Just as Article II of the Idaho Constitution prohibits the Legislature from usurping powers properly belonging to the judicial department, so does that provision prohibit the judiciary from improperly invading the province of the Legislature. As this Court noted in *Idaho State AFL–CIO v. Leroy,* 110 Idaho 691, 696, 718 P.2d 1129, 1134 (1986), "[w]e are bound to respect the reasonable exercise by the legislature of powers expressly delegated to it by the constitution of this state, and in the absence of other constitutional offense cannot interfere with it." Thus, to the extent that the 1994 legislation is a constitutional exercise of the Legislature's power to enact substantive law, that legislation is to be given due deference and respect. *Id.* at 698, 718 P.2d at 1136 ("In the absence of a legislative invasion of constitutionally protected rights, the judicial branch of government must respect and defer to the legislature's exclusive policy decisions.").

### A. DIRECTION THAT THE CONTENTS OF THE DIRECTOR'S REPORT SHALL CONSTITUTE PRIMA FACIE EVIDENCE

It was within the Legislature's power to enact the portion of I.C. § 42–1411(4) (1994), which provides that the Director's report "shall constitute prima facie evidence of the nature and extent of the water rights acquired under state law." The Idaho Rules of Evidence provide that "[i]n all civil actions and proceedings *not otherwise provided for by statute* or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption. . . ." I.R.E. 301 (emphasis added). Respondents' argument that this statutory designation is not analogous to a presumption under this rule is without merit. As ob-

served in the 1985 evidence committee comment accompanying I.R.E. 301:

> Rebuttable presumptions arise in Idaho in a number of ways: as common law presumptions, e.g., the presumption against death by suicide; by statutory creation of a presumption, e.g., the presumption of legitimacy provided in Idaho Code § 7-1119; or *by statutory assignment of "prima facie" weight to certain types of evidence,* e.g., the certificate of an acknowledgment as prima facie proof of execution of a writing under Idaho Code § 9-409.

> Where the statute creating the presumption expressly provides the force that the presumption shall carry, e.g., to shift the burden of proof, or provides the weight of evidence required to rebut the presumption, it is intended that the statute shall govern. *See, e.g.,* Idaho Code § 7-1119.

The Legislature's direction that the contents of the Director's report shall constitute prima facie evidence of some water right claims was a permissible exercise of the authority, recognized in I.R.E. 301, to create an evidentiary presumption. Unless that evidentiary presumption is overcome by the evidence or the application of that presumption is clearly erroneous on its face, the facts set forth in the Director's report are established.

## B. STATUTORY PROHIBITION AGAINST AWARDS OF COSTS AND ATTORNEY FEES AGAINST THE STATE

■ I.C. § 42-1423, (1994) which expressly prohibits an award of costs or attorney fees against the state in a general water adjudication, is a legitimate exercise of the Legislature's substantive authority. This Court has consistently held that the power to award attorney fees is governed by statute. *E.g., Hellar v. Cenarrusa,* 106 Idaho 571, 578, 682 P.2d 524, 531 (1984) ("We continue to adhere to the so-called 'American rule' to the effect that attorney fees are to be awarded only where they are authorized by statute or contract."). The Legislature's authority to reassert the state's sovereign immunity from suit has also been consistently recognized by this Court. *See Harris v. State Dep't of Health & Welfare,* 123 Idaho 295,

301, 847 P.2d 1156, 1162 (1992) (acknowledging constitutional authority of Legislature to reassert sovereign immunity eroded by courts).

The State and Legislature stipulated at oral argument this provision was not retroactively applicable to conduct preceding the effective date of the 1994 statutes. This Court therefore need not decide whether retroactive application of this statute to awards in existence at the time the statute was enacted would be constitutional. Respondent's remaining claims that the provision violates claimants' due process rights are without merit.

■ However, the Legislature's removal of state agencies from potential liability for awards of costs and fees does not deprive the district court of its inherent authority to assess sanctions for bad faith conduct against all parties appearing before it. As the United States Supreme Court explained in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991):

> There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the rules. A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.

*Id.* at 50, 111 S.Ct. at 2135-36.

## C. REMOVAL OF DIRECTOR AS A PARTY IN THE ADJUDICATION

■ As discussed above, the procedural statutes adopted in 1986, including the designation of the Director as a party, were necessary for the SRBA to be commenced. Because this Court has held that it was within

the power of the legislature to designate the Director as a party, the Director could be withdrawn as a party through the amendment or repeal of that statutory designation. Such an amendment, therefore, is not in conflict with the Rules of Procedure.

Respondents contend that allowing the Director to withdraw denies their rights to due process. However, respondents have not argued, and the record does not reveal, that the Director has asserted any proprietary right to the use of water in the water system. Nor is there any indication that the designation of the Director as a party in the adjudication affected the substantive rights of water right claimants. The withdrawal of the Director as a party does not change the status of the proprietary rights asserted by claimants in the SRBA. As this Court previously described the Director's role in the adjudication:

> A general water adjudication brought by the state is analogous to an interpleader action. The position of the director of the Department of Water Resources is analogous to the "stakeholder" in an interpleader action. The director is really a disinterested party. The only interest the director has is to see that all rights are accurately adjudicated. The director does not oppose a claim, trying to subvert a valid claim. Nor does the director stand to gain if a claim is invalidated.

*Idaho Dep't of Water Resources v. United States,* 122 Idaho 116, 122–23, 832 P.2d 289, 295–96 (1992). Withdrawal of the Director as a party in this action is consistent with this Court's description of the Director as a "stakeholder." The Director has a continuing role in the adjudication by reason of the obligation to submit reports to the district court, and remains subject to the authority of the court in fulfilling the obligations assigned by statute.

## V.

### THE ADDITIONAL PROCEDURAL STATUTES ENACTED IN 1994 WERE NOT NECESSARY FOR THE CONTINUED PROCEEDINGS IN THE SRBA

Under the authority of the 1986 statutes, the Director petitioned for commencement of the SRBA, and the SRBA was commenced by the district court. In order to commence and conduct the SRBA proceedings, the district court employed both the unique statutory procedures authorized by the 1986 statutes and the broadened Rules of Civil Procedure authorized in this Court's supplemental order. As discussed above, these special procedures were necessary for the SRBA to be commenced. After the SRBA was commenced as required by the 1986 statutes, and after this Court empowered the district court to supplement the Rules of Civil Procedure in certain regards, the question became whether additional special procedures were required in the SRBA.

At oral argument, counsel for the Legislature claimed that additional procedures were rendered constitutionally necessary because of "a change in the belief of the Legislature." The inquiry required by *R.E.W. Construction* and its progeny is whether the additional procedures are not otherwise addressed by the applicable rules or are required by changing circumstances. A change in subjective beliefs does not constitute a necessity within the meaning of the Idaho Constitution. *Cf. Ross v. Ross,* 117 Idaho at 552, 789 P.2d at 1143 (change in federal law not addressed by existing Idaho Rules of Civil Procedure rendered statutory procedure necessary).

The Idaho Rules of Evidence and the Idaho Rules of Civil Procedure prescribe the manner in which the district court should proceed on those subjects regulated by the procedural provisions in the 1994 statutes.

### A. STATUTORY DESIGNATION OF THE DIRECTOR AS AN EXPERT

I.C. § 42–1401B(1) (1994) directs that the Director is "as an independent expert and technical assistant" in the SRBA. However, the standards for qualifying a witness in any proceeding as an expert are directly addressed by Idaho Rule of Evidence 702, which provides:

> **Testimony by experts.**—If scientific, technical, or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This rule provides the means by which a witness may be qualified as an expert, and the determination of whether a witness has been so qualified is left with the district court. *See State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993) ("The trial court's determination that a witness qualifies as an 'expert' is discretionary, and this Court will review the record to determine if there was an abuse of this discretion."). To the extent that I.C. § 42–1401B(1) constitutes a legislative determination as to the Director's status as an expert, that provision is of no effect. *See State v. Zimmerman*, 121 Idaho 971, 974, 829 P.2d 861, 864 (1992) ("To the extent that this statute attempts to prescribe the admissibility of hearsay evidence and is in conflict with the Idaho Rules of Evidence, it is of no force or effect.").

## B. DIRECTION THAT UNOBJECTED TO PROVISIONS IN THE DIRECTOR'S REPORT BE DECREED AS REPORTED

■ The requirement of I.C. § 42–1411(4) (1994) that provisions in the Director's report to which no objections are filed "shall be decreed as reported" is in conflict with both the Rules of Civil Procedure and the constitutional authority of the courts as a coordinate department of government. Under the 1986 statutory framework, the district court was required to admit unobjected to portions of the Director's report "as true facts." I.C. § 42–4212(9) (1986). However, the provision in the 1994 statutes that the district court shall decree the unobjected to portions of the Director's report as those provisions are reported removes the authority of the courts to apply the facts to the law and render a conclusion. The removal of this authority contradicts the rules established by this Court for entry of default judgment and divests the court of the power to correct even an egregious error that might eliminate or impair constitutionally recognized water rights. As this Court

observed in an early case involving the adjudication of water rights, "the plaintiff, after taking default, must apply to the court for the relief demanded in the complaint; in other words, must establish by proof the material allegations of his complaint." *Joyce*, 23 Idaho at 304, 130 P. at 796.

The procedure to be followed by the district court where no objection has been raised is established by the rules for entering a default judgment in civil actions, set out in I.R.C.P. 55. In addition to providing for the entry of judgment by default, that Rule retains in the district court the inherent power to apply law to facts and render a decision. That Rule states:

If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

I.R.C.P. 55(b)(2). At oral argument, counsel for the State conceded that the district court would have the inherent power to correct errors in the report. To the extent that the 1994 statutes attempt to remove from the district court the power to exercise its discretion in determining what provisions of the Director's report shall be decreed, those provisions are in conflict with I.R.C.P. 55.

■ Although a general water adjudication is a unique type of proceeding, such an adjudication is nonetheless a suit within the original jurisdiction of the district court, as conferred by Article V, Section 20 of the Idaho Constitution. In *Mays* this Court explained:

The district court has original jurisdiction in all cases, both at law and in equity. (Const., art. 5, sec. 20.) "The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a co-ordinate department of the government." (Const., art. 5, sec. 13.) One has a right to invoke the jurisdiction of the courts to protect his right to the use of water for irrigation

purposes, and to secure an adjudication of the priority of his right as against the rights of others. Such an action would exist independent of statute.

*Mays,* 34 Idaho at 205, 200 P. at 115. The judicial power of this state is specifically conferred by the Idaho Constitution upon the courts, and cannot be constitutionally conferred upon any other department or agency. *State v. Finch,* 79 Idaho 275, 281, 315 P.2d 529, 531 (1957) ("Judicial power cannot be conferred upon any agency of the executive department, in the absence of constitutional authority, where the constitution has specifically provided for the creation of a judicial system."). Stripping the district court of the ability to review the contents of the Director's report and apply the law to the facts as established in that report is an unconstitutional intrusion into the province of the judicial department of government. As this Court noted in *Finch:*

> "It should always be kept in mind that the evil of administrative action which must be guarded against is not the fact-finding power, but the conclusiveness of the fact-finding power coupled with the order based on the findings made which would deprive a person of a property right. Such is the full exercise of judicial power, and such power in this state can be exercised only by one of the enumerated courts."

*Id.* (quoting *Laisne v. State Bd. of Optometry,* 19 Cal.2d 831, 846, 123 P.2d 457, 466 (1942)).

## C. MANDATORY SETTLEMENT CONFERENCES

I.C. § 42–1412(4) (1994) directs that "[t]he court shall before any trial . . . order a settlement conference to determine whether the matter can be settled." The conduct of settlement conferences is directly addressed by the Idaho Rules of Civil Procedure, which provide the district court with the power to order such conferences prior to trial in any civil action. I.R.C.P. 16(a) provides:

> In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conference before trial for such purposes as:

(1) expediting the disposition of the action;

(2) establishing early and continuing control so that the case will not be protracted because of lack of management;

(3) discouraging wasteful pre-trial activities;

(4) improving the quality of the trial through more thorough preparation; and

(5) facilitating the settlement of the case.

██ The district court in the present action has, through the exercise of its discretion, scheduled and conducted pretrial conferences as contemplated by this Rule. There has been no showing that the applicable procedural rule is inadequate for the purpose of conducting settlement conferences in the SRBA or that a statute addressing this issue is necessary because of changed circumstances.

## D. THE AUTHORITY URGED BY IGWA IS INAPPOSITE

IGWA asserts that *Boise Irrigation & Land Co. v. Stewart,* 10 Idaho 38, 77 P. 25 (1904), stands for the proposition that the Legislature is vested with the power to prescribe procedural rules for the district courts, and that the procedural legislation enacted in 1994 was therefore a valid exercise of this power.

The question presented in *Boise Irrigation* was whether the Supreme Court should issue a writ of prohibition to prevent a district court from rendering a judgment in a water rights case based in any way on a report of the state engineer. *Id.* at 44, 77 P. at 25. Chief Justice Sullivan denied the application for the writ, holding that it was proper for the Legislature to provide for a report from the state engineer and that the report shall be entered into evidence. Because the proceedings in district court were not prohibited by the Constitution, Chief Justice Sullivan concluded that the writ of prohibition should not issue. Justice Ailshie concurred in the conclusion that the court should not be prohibited from conducting further proceedings, but did not join in Chief Justice Sullivan's analysis. Justice Stockslager dissented, arguing that "[i]t is not within the constitutional power of the legislature to prescribe any

particular method by which a citizen of this state must establish his right to the use of the waters of the streams of the state that he has appropriated and used long years prior to the enactment of such laws." *Id.* at 64, 77 P. at 25.

■ The rationale stated in *Boise Irrigation* was the opinion of a single justice. As such, it is not a decision of this Court nor is that decision to be given precedential effect in future cases. Idaho Const. art. V, § 6;[1] *See also Osick v. Public Employee Retirement Sys.*, 122 Idaho 457, 459, 835 P.2d 1268, 1271 (1992) ("[W]here the third vote necessary to pronounce a decision is by a justice who concurs in the result only, the rationale contained in the opinion is not a decision of the Court and is not controlling in other cases."). Thus, to the extent that IGWA relies upon *Boise Irrigation* as authority of this Court, that case is of no controlling effect.

The scope of Chief Justice Sullivan's opinion in *Boise Irrigation* is also much more limited than IGWA urges. Although Chief Justice Sullivan states his belief that the power to enact rules of evidence resides with the Legislature, the constitutionality of this procedure was based on his construction of the statute as leaving the decision to order the preparation of maps with the district court. Chief Justice Sullivan interpreted the provision "[t]hat the judge of said court shall request the state engineer to make an examination of such stream...." as permissive, allowing the district court to elect not to order such an examination. *Boise Irrigation*, 10 Idaho at 57, 77 P. at 30–31 ("That provision is directory and it is left to the sound discretion of the judge whether such request shall be made or not.").

Similarly, the requirement that the district court admit evidence was upheld in Justice Sullivan's opinion because the district court retained the judicial authority to disregard the evidence submitted by the state engineer. *Id.* at 60, 77 P. at 32 ("I think the legislature has the power to authorize such maps and

plats to be introduced as evidence in a case, leaving it with the court to decide what effect should be given to the same."). Justice Sullivan also expressly relied on the fact that the statutes at issue did not unconstitutionally delegate judicial power to an executive department, stating:

It is contended that said act is unconstitutional because sections 4 and 5 thereof contravene section 2 of article 5 of the state constitution, in that it vests in the state engineer judicial power. While the provisions of those sections authorize the state engineer to pass upon and decide certain questions and matters, in the first instance, they in no way conflict with the provisions of the said section of the constitution. If anyone is aggrieved by the decision of the state engineer, he has the right to appeal to the district court.

*Id.* at 50, 77 P. at 28.

■ *Boise Irrigation* is thus neither a decision of this Court nor is the reasoning articulated by Chief Justice Sullivan persuasive authority for the proposition urged by IGWA. In addition to the controlling authority from this Court on the question of rule-making authority, the power of the courts to ultimately decide the cases presented to them, granted by Article V, Section 20 of the Constitution, has never been, and can never be, delegated to executive agencies.

## VI.

### THE POLITICAL QUESTION DOCTRINE DOES NOT PROHIBIT STATE AGENCIES FROM APPEARING SEPARATELY AND ASSERTING SEPARATE WATER RIGHTS CLAIMS IN THE SRBA

■ The district court also held that allowing separate state agencies to appear in the SRBA presented a non-justiciable political question that can only be resolved within the executive branch of government. The district court concluded that allowing the judiciary to determine the water rights claims of separate executive agencies invited

---

1. At the time *Boise Irrigation* was decided the Idaho Supreme Court consisted of three Justices, and Article V, Section 6 read in pertinent part: "The Supreme Court shall consist of three Jus-

tices, a majority of whom shall be necessary to make a quorum or pronounce a decision." Idaho Const. art. V, § 6 (amended 1920).

excessive judicial entanglement in the policy determinations of the executive branch of government. This Court has consistently recognized that the separation of powers provided by Article II of our constitution prohibits judicial review of the discretionary acts of other branches of government. *See Idaho State AFL–CIO v. Leroy,* 110 Idaho 691, 698, 718 P.2d 1129, 1136 (1986) ("[W]e hold that the legislature's determination of an emergency in an act is a policy decision exclusively within the ambit of legislative authority, and the judiciary cannot second-guess that decision."); *Diefendorf v. Gallet,* 51 Idaho 619, 638, 10 P.2d 307, 315 (1932) ("'The character of the legislation to be considered by the legislature was by the constitution left to the governor, and a review of such a discretionary act of the governor should not be done by the courts.'") (quoting *Utah Power & Light Co. v. Pfost,* 52 F.2d 226, 231 (1931)).

██ This Court has adopted the criterion set out in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), to determine whether judicial resolution of an issue would require a judicial determination of how another branch of government should exercise its discretion. *See Miles v. Idaho Power Co.,* 116 Idaho 635, 639–40, 778 P.2d 757, 761–62 (1989) (applying *Baker* to separation of powers issue arising under Article II, Section 1 of the Idaho Constitution). *Baker* directs that the courts examine: (1) whether the constitution directs that the issue be resolved by a coordinate branch of government; (2) whether judicially manageable standards exist for the resolution of the issue; (3) whether it is possible to render a decision without making an initial nonjudicial policy determination; (4) whether judicial resolution would evince a lack of the respect due coordinate branches of government; (5) whether there is an unusual need for unquestioning adherence to a political decision already made; or (6) whether judicial resolution would embarrassingly result in varied rules among separate departments of government on a single question. 369 U.S. at 217, 82 S.Ct. at 710.

██ The issues submitted to the district court, even if submitted by separate agencies of the executive branch, present an appropriate subject for judicial review. The Idaho Constitution vests the courts with authority to determine the priority of claimed rights to use water. *Mays v. District Court,* 34 Idaho 200, 205, 200 P. 115, 115 (1921) ("One has a right to invoke the jurisdiction of the courts to protect his right to the use of water for irrigation purposes, and to secure an adjudication of the priority of his right as against the rights of others."). The State's claims are submitted under the SRBA statutes in the same manner as the claims of private citizens, and the standards for resolving those claimed rights are in no way different from the judicial standards used to adjudicate all other claims. Those standards require adjudication based on priorities of beneficial use, and do not require the district court to undertake an initial policy determination. Resolution of the competing claims of state agencies by the district court will not create multiple, inconsistent pronouncements from various departments; although executive agencies might assert multifarious claims to water rights, the adjudication of those claims will result in a final decree resolving the rights claimed.

██ There is also no basis from which to conclude that allowing state agencies to separately claim proprietary water rights constitutes a violation of the due process rights of other claimants. The due process provisions of the Idaho and United States constitutions provide a right for claimants to be heard at a meaningful time and in a meaningful manner when their property rights are being adjudicated. *See Sweitzer v. Dean,* 118 Idaho 568, 573, 798 P.2d 27, 32 (1990). Claimants do not assert that they are deprived of any such opportunity, and the record reveals no such deprivation. The fact that different state agencies may assert conflicting water rights claims in the SRBA does not deprive other claimants of the reasonable opportunity to litigate their claims in that adjudication.

## VII.

## THE REQUIREMENT THAT THE DISTRICT COURT PROVIDE FOR THE ADMINISTRATION OF WATER RIGHTS IS NOT AN IMPERMISSIBLE DELEGATION OF EXECUTIVE AUTHORITY

I.C. § 42–1412(8) (1986) requires that, after resolution of contested matters, the dis-

trict court shall enter a partial decree determining the nature and extent of the water right adjudicated. That provision, as amended in 1994, also provides that "[t]he decree shall also contain an express statement that the partial decree is subject to such general provisions necessary for the definition of the rights or for the efficient administration of the water rights." I.C. § 42–1412(6) (1994). The district court held that this statute is unconstitutional because it delegates executive administrative powers to the judicial branch of government.

■ If this provision, or other similar directives throughout Title 42, Chapter 14 of the Idaho Code, required that the district court actively administer the delivery of water in conformance with its decree, that provision would create an unworkable, unconstitutional delegation of authority. *Cf. Mahaffey v. State*, 87 Idaho 228, 232, 392 P.2d 279, 281 (1964) (noting that prison supervision and maintenance is an executive duty, and courts lack jurisdiction to supervise matters of ordinary prison discipline). However, the requirement that the district court include in its decree those provisions necessary for the executive to administer the rights decreed is not an impermissible delegation. This Court was previously faced with a challenge to the authority of a court to include administrative provisions in a water rights decree in *Silkey v. Tiegs*, 51 Idaho 344, 5 P.2d 1049 (1931). In *Silkey*, this Court quoted with approval the United States Supreme Court's opinion in *Montezuma Canal Co. v. Smithville Canal Co.*, 218 U.S. 371, 385, 31 S.Ct. 67, 73, 54 L.Ed. 1074 (1910), which held:

> "But because it was within the legislative power to provide administrative machinery to supervise the common use of water in a flowing stream by those having a lawful right to appropriate the water of that stream for beneficial use, it does not result that the decree entered by the court below was in excess of its authority. On the contrary in view of the absence of legislative action on the subject, and of the necessity which manifestly existed for supervising the use of the stream by those having the right to take the water in accordance with the decree which, undoubtedly to that extent, the court was authorized to render, we think the action taken by the court did not transcend the bounds of judicial authority, and therefore is not justly amenable to the attack made upon it."

*Silkey*, 51 Idaho at 358, 5 P.2d at 1055. It is within the constitutional authority of the court to include in its decrees "such general provisions necessary for the definition of the rights or for the efficient administration of the water rights." I.C. § 42–1412(6) (1994).

## VIII.

### WHETHER THE 1994 STATUTES REMOVE THE SRBA FROM THE SCOPE OF THE McCARRAN AMENDMENT DOES NOT PRESENT A JUSTICIABLE CONTROVERSY

Respondents further argue that, if the 1994 statutes are given effect, the SRBA will no longer fall within the waiver of federal sovereign immunity provided by the McCarran Amendment. 43 U.S.C. § 666. Respondents contend that the Legislature's ongoing modification of the SRBA statutes has altered the character of the adjudication to such an extent that it is no longer a "suit" within the meaning of the McCarran Amendment.

After the Director initially petitioned the district court for commencement of the SRBA, the United States filed a special appearance in the adjudication in order to challenge the district court's jurisdiction over federal claims. The United States argued that the SRBA petition did not comply with the consent to suit provisions set out in the McCarran Amendment because the rights of the United States in four adjudicated tributaries, including the Boise River and Weiser subbasins, had not been finally or completely adjudicated. The district court issued an order commencing the adjudication, including the four adjudicated tributaries. Seven irrigation districts that draw their water from the Boise and Weiser rivers appealed that decision to this Court, which affirmed the district court. The United States Supreme Court denied the irrigation districts' petition

for certiorari. *In re Snake River Basin Water Sys.*, 115 Idaho 1, 764 P.2d 78 (1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). In a later case, the United States Supreme Court held that the McCarran Amendment "submits the United States generally to state adjective law, as well as to state substantive law of water rights...." *United States v. Idaho Dep't of Water Resources*, 508 U.S. 1, 8, 113 S.Ct. 1893, 1897, 123 L.Ed.2d 563 (1993).

Respondents argue that the Legislature's ongoing modification of the SRBA statutes has changed the nature of the adjudication so that it no longer complies with the McCarran Amendment's requirements. Respondents further point out that the prior decisions of this Court and the United States Supreme Court holding that the SRBA is within the McCarran Amendment's waiver of federal sovereign immunity do not apply to the adjudication as altered by the 1994 legislation.

■ This argument misapprehends the role of this Court in reviewing legislation. This Court's primary function in construing constitutionally enacted legislation is to ascertain and give force to the intent of the Legislature as expressed in the statutes enacted by that body. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539, 797 P.2d 1385, 1387 (1990). The Legislature expressly declared that it intended for the 1994 modifications to the adjudication statutes be applied to the SRBA. The Legislature was aware of the state of the law at the time the 1994 statutes were enacted, and the Legislature's decision to amend the adjudication statutes was made mindful of the laws affected by those amendments. The possibility that changes to the adjudication statutes may remove the SRBA from the McCarran Amendment's waiver of federal sovereign immunity does not alter the constitutional authority of the Legislature to enact such statutes.

■ It is not within the power of this Court to invalidate statutes enacted through the reasonable exercise of the Legislature's constitutional powers. *Idaho State AFL–CIO v. Leroy*, 110 Idaho 691, 696, 718 P.2d 1129, 1134 (1986). The question of whether the 1994 amendments remove the SRBA from the terms of the McCarran Amendment does not bring into question the authority of the Legislature to enact such statutes. As this Court observed in *In re Permit No. 36–7200*, 121 Idaho 819, 824, 828 P.2d 848, 853 (1992), " '[t]he wisdom, justice, policy, or expediency of a statute are questions for the Legislature alone.... It is the duty of the courts to interpret the meaning of legislative enactments without regard to the possible results.' " *Id.* (quoting *Berry v. Koehler*, 84 Idaho 170, 369 P.2d 1010 (1961)) (alterations in *Permit No. 36–7200*). The contention that a statute or set of statutes may not achieve the policy goals for which they were adopted presents issues constitutionally committed to the political branches of government. We therefore decline to pass on the impact, if any, of the 1994 statutes as they relate to the waiver of federal sovereign immunity under the McCarran Amendment.

## IX.

### SEVERABILITY

The district court concluded that the majority of the 1994 statutes were either unconstitutional or were so dependant on the stricken provisions that the remaining statutes could not exist independently from the stricken provisions. Because this Court has reversed some of the district court's rulings on the constitutionality of the 1994 statutes, it is necessary to determine whether the provisions upheld under this Court's decision are sufficiently independent from the stricken statutes for the remaining statutes to be given effect after the unconstitutional provisions are severed.

This Court has observed that "[w]hen part of a statute or ordinance is unconstitutional and yet is not an integral or indispensable part of the measure, the invalid portion may be stricken without affecting the remainder of the statute or ordinance." *Voyles v. City of Nampa*, 97 Idaho 597, 600, 548 P.2d 1217, 1220 (1976); *see also Lynn v. Kootenai County Fire Protective Dist. No. 1*, 97 Idaho 623, 626, 550 P.2d 126, 129 (1976) ("If the unconstitutional section does not in and of itself appear to be an integral or indispens-

able part of the chapter, then it may be stricken therefrom.").

When determining whether the remaining provisions in a statute can be severed from the unconstitutional sections, this Court will, when possible, recognize and give effect to the intent of the Legislature as expressed through a severability clause in the statute. *Lynn,* 97 Idaho at 627, 550 P.2d at 130. In both the original 1986 adjudication statutes and the 1994 amendments to those statutes, the Legislature provided that "[t]he provisions of this act are hereby declared to be severable and if any provisions of this act or the application of such provision to any person or circumstance is declared invalid for any reason, such declaration shall not affect the validity of remaining portions of this act." I.C. § 42–1428 (1994).[2] Because striking the unconstitutional portions of H.B. 454 (1994) does not prevent the remaining provisions of that legislation from functioning as the legislature intended, the unconstitutional provisions may be severed without requiring that the remaining provisions of that act be invalidated.

## X.

## CONCLUSION

The district court's memorandum decision is affirmed in part, reversed in part, and the case remanded to the district court for further proceedings consistent with this opinion. No costs are awarded on appeal.

JOHNSON, TROUT and SCHROEDER, JJ., concur.

SILAK, Justice, concurring and dissenting.

I respectfully dissent from parts V.A. (statutory designation of director as an expert), and V.B., (unobjected to provisions in director's report to be decreed as reported) of the Court's opinion. I concur in the balance of the opinion, namely parts I., II., III., IV.A.–C., V.C., V.D., VI., VII., VIII., IX., and X.

2. Formally codified as I.C. § 42–1423 (1986).

## I.

## STATUTORY DESIGNATION OF THE DIRECTOR AS AN EXPERT, PART V.A.

In part V.A., the Court's opinion holds that I.C. § 42–1401B(1) (1994) is of no effect because it conflicts with Idaho Rule of Evidence 702. I discern no such conflict, and would allow the provision to stand.

The Court's analysis in part V.A. fails to apply several established rules of construction. "[W]henever possible, a statute must be construed so as to achieve a constitutional result." *Sandpoint Convalescent Services, Inc. v. Dept. of Health and Welfare,* 114 Idaho 281, 282, 756 P.2d 398, 399 (1988). "Statutes are to be construed to give effect to the intent of the legislature." *Grand Canyon Dories v. Tax Com'n,* 124 Idaho 1, 5, 855 P.2d 462, 466 (1993). "Words and phrases of a statute are construed according to context." *Id.*

When its true intent and context is considered, I.C. § 42–1401B(1) is easily reconciled with I.R.E. 702. The statute provides:

42–1401B. ROLE OF THE DIRECTOR IN AN ADJUDICATION. (1) The director's role under this chapter is as an independent expert and technical assistant to assure that claims to water rights acquired under state law are accurately reported in accordance with the procedures of chapter 14, title 42, Idaho Code. The director shall make recommendations as to the extent of beneficial use and administration of each water right under state law and may use uniform parameters for quantification of beneficial use recommended for rights within climatic regions of the state.

The statute generally describes the Director's "role" in the adjudication, which is to be "as an independent expert and technical assistant." Furthermore, subsection (1) should be read in conjunction with subsection (3) of 42–1401B, which provides "[t]he director shall not be a party to an adjudication." (*See* Court's opinion part IV.C., upholding removal of director as a party in the

adjudication). Subsection (1) is essentially the legislature's explanation of the Director's new role in the adjudication, as compared to his former status as a party.

The Court's opinion, however, concludes that the statute's use of the word "expert" conflicts with Rule of Evidence 702, which pertains to qualifying expert *witnesses* to give *opinion testimony* at trial (*see* Rule 702 quoted at p. 16 of the Court's opinion). The Court's opinion reads too much into the word "expert" in the statute. There is nothing to indicate that the legislature, in describing the Director's role as that of "an independent expert and technical assistant," meant to automatically qualify the Director as an expert *witness* in the sense used in I.R.E. 702. The majority should not presume that the legislature intended to qualify the Director to give opinion testimony on any issue, contrary to I.R.E. 702. "The legislature is presumed not to intend to overturn long established principles of law unless an intention to do so plainly appears by express declaration or the language employed admits of no other reasonable construction." *George W. Watkins Family v. Messenger,* 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990); *Doolittle v. Morley,* 77 Idaho 366, 372, 292 P.2d 476, 481 (1956).

The statute and Rule 702 may be construed to avoid any conflict and to reach a constitutional result. The statute's use of "expert" can be interpreted not to abrogate Rule 702. If the Director ever actually seeks to "testify" at a hearing in the form of an "opinion," the trial court will still have the discretion to determine if the Director is "qualified as an expert by knowledge, skill, experience, training or education," to give opinion testimony on a particular question then at issue. I.R.E. 702. Because I.C. § 42–1401B subsection (1) can be reasonably construed to avoid any conflict with I.R.E. 702, I dissent from the Court's holding that the statutory provision is unconstitutional.

## II.

## UNOBJECTED TO PROVISIONS IN THE DIRECTOR'S REPORT TO BE DECREED AS REPORTED, PART V.B.

In part V.B., the Court's opinion announces another conflict between the statute and rules of this Court which I do not believe exists. The Court holds that the requirement that unobjected to provisions in the Director's report "shall be decreed as reported" conflicts with the Rules of Civil Procedure, and that such provision is also "an unconstitutional intrusion into the province of the judicial department of government...." (Opinion at p. 627)

The provision in question is I.C. § 42–1411(4), which reads as follows:

... Upon filing with the court, the director's report, except for the explanatory material referred to in subsection (1) of this section, shall constitute prima facie evidence of the nature and extent of the water rights acquired under state law. *The unobjected to portions of the director's report shall be decreed as reported.*

(emphasis added).

I.C. § 42–1411(5) provides:

Each claimant of a water right acquired under state law has the ultimate burden of persuasion for each element of a water right. Since the director's report is prima facie evidence of the nature and extent of the water rights acquired under state law, a claimant of a water right acquired under state law has the burden of going forward with the evidence to establish any element of a water right which is in addition to or inconsistent with the description in a director's report. Any party filing an objection to any portion of the director's report shall have the burden of going forward with the evidence to rebut the director's report as to all issues raised by the objection. Any other party to the proceeding may submit evidence in opposition to the objector's position and in support of the director's report. *All such proceedings shall be governed by the Idaho rules of civil procedure and Idaho rules of evidence.*

(emphasis added). The Court's opinion reads the "decreed as reported" provision as stripping the trial court of its ability to apply the law to the facts and make corrections to the report. The Court's opinion also finds a conflict with I.R.C.P. 55.

However, the conflict the Court's opinion sees with I.R.C.P. 55 is reconciled by the

provision that "[a]ll such proceedings shall be governed by the Idaho rules of civil procedure and Idaho rules of evidence." I.C. § 42–1411(5). "Statutes are to be construed to give effect to the intent of the legislature." *Grand Canyon Dories*, 124 Idaho at 5, 855 P.2d at 466. Here, the legislature's intent is that the Rules of Civil Procedure govern and should be given effect. Hence, "the decreed as reported" provision should not be viewed in isolation, but rather harmonized with I.C. § 42–1411(5), as well as with I.R.C.P. 55. For instance, the district court itself may find objectionable portions of a report, even though no other party has filed objections, and such report need not be immediately "decreed as reported." Pursuant to I.R.C.P. 55(b)(2), "[t]o establish the truth of any averment by evidence" or to "make an investigation of any other matter" the court can "conduct such hearings ... as it deems necessary and proper." I.R.C.P. 55(b)(2). *See Sandpoint Convalescent*, 114 Idaho at 282, 756 P.2d at 399 ("Whenever possible, a statute must be construed so as to achieve a constitutional result.")

In interpreting statutes, the courts do not presume the legislature intended to "overturn long established principles of law" unless such intent appears by "express declaration or the language employed admits of no other reasonable construction." *George W. Watkins Family v. Messenger*, 118 Idaho at 541, 797 P.2d at 1389. No express declaration appears in I.C. § 42–1411(4) that the entry of the court's decree shall not be performed according to the Idaho Rules of Civil Procedure. A reasonable construction of this

section, particularly when harmonized with § 42–1411(5),[3] is that the legislature intended that the trial court could make factual corrections to the report or correct errors of law, in accord with Rule 55. Indeed, the State of Idaho at oral argument conceded that the district court retains its power under Rule 55 to correct errors in the director's report.

The "decreed as entered" provision may be interpreted and applied in harmony with the Rules of Civil Procedure and Rules of Evidence, and thus, should not be stricken from the statute as unconstitutional.

---

3. An earlier version of the provisions now codified as I.C. § 42–1411(4) and (5) was contained in H.B. 969, 1994 Sess.Laws, Ch. 454, at p. 1463. The prior version relating to unobjected to provisions and objections was contained in one paragraph, and included the same language pertaining to the applicability of the Idaho Rules of Civil Procedure and the Idaho Rules of Evidence as found in the current codification of I.C. § 42–1411(5). The prior text reads as follows:
(4) Upon filing with the court, the director's report, except for the explanatory material referred to in subsection (1) of this section, shall constitute prima facie evidence of the nature and extent of the water rights acquired under state law. The unobjected to portions of the director's report shall be decreed as reported. Any party

filing an objection to any portion of the director's report shall have the burden of going forward with the evidence to rebut the director's report as to all issues raised by the objection. If a party successfully rebuts the director's recommendation, any other party to the proceeding may submit evidence in opposition to the objector's position and in support of the director's report. The ultimate burden of proof shall be on the claimant if the prima facie validity of the director's recommendation is rebutted. All such proceedings shall be governed by the Idaho rules of civil procedure and Idaho rules of evidence.
The need to harmonize the two sections is all the more apparent because they originated from one original section in the earlier House Bill 969.